# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                          Case No. 03-32063
                                                               Chapter 7
TERRY MANUFACTURING
COMPANY, INC.,

        Debtor.


J. LESTER ALEXANDER, III,                                      Adv. Pro. No. 05-3050
TRUSTEE IN BANKRUPTCY
OF TERRY MANUFACTURING
COMPANY, INC.,

        Plaintiff,

    v.

CLIFTON ALBRIGHT, et al.,

        Defendant.


## <u>MEMORANDUM DECISION</u>

This Adversary Proceeding is before the Court upon several motions for summary

judgment. On September 21, 2006, John Bernard and a number of other Defendants filed a

motion for summary judgment.[1] (Docs. 416, 417). A number of defendants joined Bernard's

motion.[2] On August 15, 2006, the Estate of Derrick Thomas filed a motion for summary

---

[1] The following are moving parties: John Bernard, III, George Bernard Brown, Linda
Brown-Henderson, George and Delores Crawford, Roy and Rita Harris, Paul and Dolly
Marshall, Calvin Sanders, Jr., Kimberly Sanders, Stanford D. Stoddard, Swanson Funeral Home,
Inc., O'Neil Swanson, Linda Swanson, Kimberly Swanson-Thomas, Henry and Yvonne Thomas,
and Charles West.

[2] The following Defendants have filed joinders in the Bernard summary judgment
motion: Clifton Albright (Docs. 415, 441); Greater Omentum, Inc. (Docs. 422, 445); Robert A.L.
Harms, the Robert A.L. Harms Revocable Trust, Pauline Ormsby, Horace Stevenson, and Gary

judgment. (Docs. 403-405). Plaintiff J. Lester Alexander, III, filed a cross motion for partial summary judgment on August 22, 2006. (Docs. 406, 409). In addition, motions for summary judgment were filed by Yvonne Davis-Robinson (Doc. 348), Stanford C. Stoddard (Doc. 349), and Swanson Funeral Home. (Doc. 350). As Yvonne Davis-Robinson was dismissed on September 8, 2006, pursuant to a settlement (Doc. 411), her motion is DENIED AS MOOT. As a final matter, Plaintiff J. Lester Alexander has filed a motion in limine. (Doc. 407).

The Court held hearings on the motions for summary judgment on November 14, 2006 and January 24, 2007. The parties have filed extensive briefs. For the reasons set forth below: (1) the motion for summary judgment filed by John Bernard is DENIED and all motions joining in that motion are DENIED; (2) the motion for summary judgment filed by the Estate of Derrick Thomas is GRANTED IN PART AND DENIED IN PART; and (3) the motion for summary judgment filed by Plaintiff J. Lester Alexander is GRANTED IN PART AND DENIED IN PART. Moreover, the ruling on the motion in limine filed by J. Lester Alexander is deferred.

## I. ADVERSARY PROCEEDING HISTORY

This Adversary Proceeding was commenced on June 29, 2005. (Doc. 1). The Trustee amended his complaint on July 20, 2005. (Doc. 61). The Trustee's complaint consisted of three counts. Count I is an action to avoid certain dividend payments as fraudulent conveyances pursuant to 11 U.S.C. § 544(b) and the Alabama Fraudulent Conveyance Act. Count II is an action to avoid the payments as fraudulent conveyances pursuant to 11 U.S.C. § 548. Count III was an action to avoid certain payments as preferences pursuant to 11 U.S.C. § 547, which the

---

E. Wilson (Doc. 423); William Holder (Doc. 424); ECD Investments, LLC (Docs. 419, 440); and the Estate of Derrick Thomas (Docs. 421, 444).

Court dismissed on November 21, 2005. (Docs. 197, 198). The fraudulent conveyance counts (Counts I and II) remain.

The Trustee has brought suit against sixty-five named Defendants. Twenty-five have been disposed of by way of dismissal or entry of default, leaving pending claims against forty parties. The following is a listing of the party Defendants and their status:

| Defendants | Disposition |
| --- | --- |
| Clifton Albright | Pending |
| John Bernard, III | Pending |
| Archibald W. Brown, Jr. | Dismissed on December 11, 2006 (Doc. 457) |
| George Bernard Brown | Pending |
| Linda Brown-Henderson | Pending |
| Fred A. Calloway & Eugenia J. Calloway | Dismissed on December 11, 2006 (Doc. 457) |
| Elijah Carter and Janet Carter Irrevocable Trust | Default entered on December 11, 2006 (Doc. 458) |
| Cleveland Avenue OB-Gyn, P.C. | Dismissed on December 11, 2006 (Doc. 457) |
| Benjamin L. Coleman | Default entered on December 11, 2006 (Doc. 456) |
| George I. Crawford & Delores H. Crawford | Pending |
| Lemuel Daniels as Trustee for Quintin Daniels | Dismissed on December 11, 2006 (Doc. 457) |
| Yvonne Davis-Robinson | Dismissed on September 8, 2006 (Doc. 411) |

Case 05-03050    Doc 473    Filed 01/25/07    Entered 01/25/07 17:15:57    Desc Main
Document    Page 3 of 22

| | |
|---|---|
| Robert Lee Dunham | Dismissed on December 11, 2006 (Doc. 457) |
| ADP Brokerage Services Group, successor-in-interest for U.S. Clearing, Custodian for the IRA of Charles T. Duvall | Dismissed on January 25, 2006 (Doc. 220) |
| Wedbush Morgan Securities, Inc., Custodian of IRA of Charles T. Duvall | Dismissed on January 4, 2007 (Doc. 467) |
| ADP Brokerage Services Group, successor-in-interest for U.S. Clearing, Custodian for the IRA of Edith M. Duvall | Dismissed on January 25, 2006 (Doc. 220) |
| ECD Investments, LLC | Pending |
| Greater Omentum, Inc. | Pending |
| Robert A.L. Harms | Pending |
| Robert A.L. Harms Revocable Trust | Pending |
| Roy Harris & Rita Bernard-Harris | Pending |
| William Holder | Pending |
| Samuel L. Jackson | Dismissed on December 11, 2006 (Doc. 457) |
| Glenn E. Johnson | Dismissed on December 11, 2006 (Doc. 457) |
| Joseph K. Johnson | Dismissed on December 11, 2006 (Doc. 457) |
| Brian Jordan & Pamela Jordan | Pending |
| Lorenzo L .Kirkland | Dismissed on January 24, 2007 (Doc. 471) |

| | |
|---|---|
| Tyrone Cecil Malloy | Dismissed on December 11, 2006 (Doc. 457) |
| Paul T. Marshall & Dolly A. Marshall | Pending |
| Russell J. Maryland | Dismissed on December 11, 2006 (Doc. 457) |
| Roosevelt McCorvey, M.D. | Dismissed on December 11, 2006 (Doc. 457) |
| Kenneth H. McCoy | Dismissed on September 27, 2006 (Doc. 428) |
| Sedrick McIntyre & Jeraldean P. McIntyre | Pending |
| Harold Warren Moon | Dismissed on December 11, 2006 (Doc. 457) |
| Rita McSweeny O'Brien | Pending |
| Pauline Ormsby | Pending |
| James L. Patrick & Pamela J. Patrick | Dismissed on December 11, 2006 (Doc. 457) |
| Walter H. Rasby, III | Dismissed on January 24, 2007 (Doc. 471) |
| Calvin Sanders, Jr. & Kimberly M. Sanders | Pending |
| Willard Smith, II | Pending |
| John Does 1-99 as Successors-in-interest to Southern Entrepreneurs | Dismissed on October 19, 2006 (Doc. 433) |
| Horace Stevenson | Pending |
| Stanford C. Stoddard | Pending |

Case 05-03050   Doc 473   Filed 01/25/07   Entered 01/25/07 17:15:57   Desc Main
Document   Page 5 of 22

| | |
|---|---|
| SunTrust Bank | Dismissed on August 11, 2006 (Doc. 400) |
| Swanson Funeral Home | Pending |
| Kimberly Swanson-Thomas | Pending |
| Linda E. Swanson | Pending |
| O'Neil Swanson | Pending |
| Estate of Derrick Thomas | Pending |
| Henry J. Thomas & Yvonne Thomas | Pending |
| Rudolph Washington & Gail Washington | Pending |
| Charles A. West | Pending |
| Leonard R. Wilkens | Dismissed on August 11, 2006 (Doc. 400) |
| Gary E. Wilson | Pending |
| Edward Jones, Custodian for the IRA of Lonell Wright | Pending |

## II. FACTS

### A. General

Terry Manufacturing filed a petition in bankruptcy on July 7, 2003. (Case No. 03-32063). The case began as one under Chapter 11, but it was converted to a case under Chapter 7 on May 13, 2004. Terry Manufacturing was a textile business whose primary business activity was making uniforms. Terry Manufacturing's largest customers were the United States Department of Defense, for which it made combat fatigues, and McDonalds, for which it made

-6-

the familiar fast food worker's uniforms.  Terry Manufacturing was run by brothers Roy Terry and Rudolph Terry, both of whom were shown to be dishonest businessmen.  The history of Terry Manufacturing is set forth in some detail in a recent decision handed down by this Court in another Adversary Proceeding.  See Alexander v. Horton (In re Terry Mfg. Co.), 345 B.R. 377 (Bankr. M.D. Ala. 2006).

## B.  The Preferred Shareholders

Except for a few Defendants who were issued contracts, it is undisputed that all of the named Defendants here were the holders of Class B Preferred Stock issued by Terry Manufacturing.[3]  The terms under which the preferred shares were issued is governed by a Private Placement Memorandum issued by Terry Manufacturing on October 21, 1996.  (Doc. 436, Ex. A).  It is also undisputed that Terry Manufacturing paid dividends on the preferred stock in the amounts and on the dates set forth in detail in the complaint.  The Court will assume, for purposes of this motion only, that Terry Manufacturing was insolvent on July 7, 1999, and at all times after.

## C.  The Contract Holders

As discussed above, four of the Defendants held "contracts" rather than Series B Preferred Stock.  John Bernard, III, held a contract dated September 11, 2002, whereby Bernard purchased a "short-term investment."  (Doc. 351, Ex. 2).  Stanford Stoddard entered into a nearly identical contract, also on September 11, 2002.  (Doc. 351, Ex. 3).  On September 16, 2002,

---

[3]  Defendants Yvonne Davis-Robinson, John Bernard, Stanford Stoddard, and Swanson Funeral Home, held interests under contracts.  Yvonne Davis-Robinson was dismissed and is no longer an active party to this proceeding.  The claims of the Trustee against Bernard, Stoddard, and Swanson Funeral Home are discussed separately below.

-7-

Swanson Funeral Home executed a contract in the same form as the Bernard and Stoddard contracts. (Doc. 351, Ex. 5). These contracts are noteworthy in that the amount transferred from these Defendants to Terry Manufacturing is termed an "investment" and not a loan. Moreover, these Defendants were to be paid a "profit-sharing fee" of 15% of the amount of the investment. That is a 15% return for an investment which was to be for a term of sixty-one days.

It should be noted that the fourth Defendant held a contract, rather than stock, which contained terms much different from those of the Bernard, Stoddard, and Swanson contracts. Defendant Yvonne Davis-Robinson held a contract which was clearly called a "loan." The loan paid a "fee" at a rate of 9.5% per year. The Trustee has settled with Davis-Robinson, and so her motion for summary judgment is moot. (Doc. 411). However, Davis-Robinson's contract provides both context and contrast to the contracts of the other three Contract Holders. This further underscores the difficulty of determining, at this juncture, whether the contracts at issue are debt or equity instruments.

### D. Derrick Thomas

At some point in the 1990's, Derrick Thomas purchased Series B Preferred Stock in Terry Manufacturing. The Court will assume, for purposes of this motion only, that he received dividends as follows:

| | |
|---|---|
| 7/29/99 | $2,250.00 |
| 10/29/99 | $2,250.00 |
| 1/31/00 | $2,250.00 |

Derrick Thomas died on February 8, 2000. Shortly thereafter, probate proceedings were commenced in Missouri, and a personal representative was appointed. After his death, Terry Manufacturing continued to pay dividends directly to his estate as follows:

| | |
|---|---|
| 4/27/00 | $2,250.00 |
| 7/31/00 | $2,250.00 |
| 11/02/00 | $2,250.00 |
| 2/05/01 | $2,250.00 |
| 5/09/01 | $2,250.00 |
| 8/09/01 | $2,250.00 |
| 11/12/01 | $2,250.00 |
| 2/15/02 | $2,250.00 |
| 5/21/02 | $2,250.00 |
| 8/22/02 | $2,250.00 |
| 11/29/02 | $2,250.00 |
| 3/7/03 | $2,250.00 |

To summarize, Derrick Thomas received dividends totaling $6,750.00 prior to his death, and his estate received $27,000.00 after he died.

### III.  THE ISSUES

The Court will divide its discussion here into three parts.  First, the Court will discuss the question of whether the payment of dividends to the Preferred Shareholders may be recharacterized as payments in partial satisfaction of an obligation to make restitution.  Second, the Court will discuss whether the Bernard Contracts may properly be characterized as loans and the payments under those contracts as made in satisfaction of a debt.   Third, the Court will consider whether the Trustee's action against the Estate of Derrick Thomas is barred by the Missouri non-claim statute.

### IV.  CONCLUSIONS OF LAW

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  As the Court does not dispose of all the claims of all parties, the order entered in conjunction with this Memorandum Decision is not a

-9-

final order within the meaning of Rule 54(b), FED. R. CIV. P., as made applicable to Adversary Proceedings pursuant to Rule 7054, FED. R. BANKR. P.

This Adversary Proceeding is before the Court on several motions for summary judgment. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56, made applicable to Adversary Proceedings pursuant to FED. R. BANKR. P. 7056; see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Jones v. City of Columbus, 120 F.3d 248, 250 (11th Cir. 1997). Rule 56(c) provides as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also, Alexander v. Southern Mills, Inc., (In re Terry Mfg. Co.), 325 B.R. 638, 641-42 (Bankr. M.D. Ala. 2005) (finding material facts in dispute, and therefore, the motion for summary judgment was denied). The facts must be viewed in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

### A. The Preferred Shareholders

#### 1. Overview of Count I of the Complaint

There are two counts of the Trustee's complaint which are still in play. Count I is a fraudulent conveyance count under section 544(b) of the Bankruptcy Code and the Alabama Fraudulent Transfer Act. Section 544(b) of the Bankruptcy Code permits the Trustee in bankruptcy to stand in the shoes of existing creditors and bring any action that could have been

-10-

brought by an unsecured creditor had a bankruptcy petition not been filed. In Count I, the

Trustee alleges, in the alternative, that the transfers in question were made in violation of ALA.

CODE § 8-9A-4 and 5. Count I consists of two theories of recovery. The first theory is based

upon a claim of actual fraud. The second theory is based upon implied fraud that is the Debtor's

failure to receive reasonably equivalent value for a transfer made while it was insolvent. These

theories will be discussed in order.

Alabama Code § 8-9A-4(a) provides that "[a] transfer made by a debtor is fraudulent as

to a creditor, whether the creditor's claim arose before or after the transfer was made, if the

debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the

debtor." The Defendants allege that there is no evidence that they committed a fraud on anyone,

which is probably true. The alleged fraud was committed by Roy and Rudolph Terry. However,

that the Defendants are innocent of any wrongdoing does not shelter the transfer to them from

being avoided under bankruptcy law. See Powers v. Heggie, 167 N.E. 314, 317 (Mass. 1929)

(holding that the "good faith of the [shareholder] in receiving the dividends . . . his absence of

knowledge that the corporation was insolvent or that the payment of the specific dividends

would defeat, delay or defraud any existing creditor of the corporation" does not change the fact

that the dividends were fraudulent conveyances).

The second theory supporting Count I of the Complaint is based upon Alabama Code § 8-

9A-5(a), which provides that "[a] transfer made by a debtor is fraudulent as to a creditor whose

claim arose before the transfer was made if the debtor made the transfer without receiving a

reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time

or the debtor become insolvent as a result of the transfer." The gist of the Defendants' argument

is that Terry Manufacturing received reasonably equivalent value for the transfers in question in that Terry Manufacturing received a dollar for dollar decrease in its obligation to make restitution to the shareholders for the fraud allegedly committed by the Terry brothers. If it could be shown that the transfers in question were made for reasonably equivalent value, then the implied fraud portion of Trustee's case (that part which relies upon ALA. CODE § 8-9A-5) necessarily fails.

### 2. The nature of dividend payments

The Court will next discuss the problems which arise when an insolvent corporation pays dividends. Strictly speaking, dividends are not paid in exchange for anything. Rather, dividends are the means by which a corporation distributes its profits to its shareholders. That is, one purchases stock in a corporation in hopes that it will earn a profit and distribute those profits to its shareholders. Where, as it is alleged here, an insolvent corporation nevertheless continues to pay dividends, those payments are made for no value to the corporation and such payments are necessarily fraudulent conveyances. See Adelphia Communications Corp. v. Rigas (In re Adelphia Communications Corp.), 323 B.R. 345, 377 (Bankr. S.D.N.Y. 2005) (stating that "dividends from insolvent entities are classic fraudulent conveyances"); Pereira v. Equitable Life Ins. Society (In re Trace Int'l Holdings, Inc.), 289 B.R. 548, 560-61 (Bankr. S.D.N.Y. 2003) (holding that dividends paid from an insolvent corporation to shareholders were made for no value and therefore, were fraudulent conveyances); Farm Stores, Inc. v. School Feeding Corp., 102 A.D.2d 249, 254 (N.Y. App. Div. 1984) (holding that payments to shareholders from insolvent corporations in derogation of the rights of general creditors were in bad faith). It should be noted that the payment of dividends is not in and of itself something sinister. The

Case 05-03050    Doc 473    Filed 01/25/07    Entered 01/25/07 17:15:57    Desc Main
Document    Page 12 of 22

problem arises where, as here, the corporation pays dividends while it is insolvent. When this happens, an improper diversion of money from the creditors of the corporation to its shareholders has been made. The purpose of a fraudulent conveyance action is to remedy this improper diversion.

One might reasonably ask why an insolvent corporation would ever pay dividends. In this case, Roy Terry and Rudolph Terry, the two principals of Terry Manufacturing, were looting the assets of the company.[4] False financial statements were issued by Terry Manufacturing, and the true state of its financial affairs was not generally known. The dividends paid by Terry Manufacturing, which are the subject of this Adversary Proceeding, were paid to keep up the facade that Terry Manufacturing was a profitable business entity. Had Terry Manufacturing not paid the dividends at issue, shareholders and creditors would undoubtedly have asked questions which the Terry brothers did not want to answer. The issuance of false financial statements and the payment of dividends were an essential part of that fraud.[5]

The Preferred Shareholder Defendants contend that they were defrauded by the Terry brothers and by Terry Manufacturing. They further contend that they are owed restitution and that the payment of those dividends satisfied, at least in part, this restitution obligation. As both of the Terry brothers are in Federal prison on a variety of fraud charges, the Defendants' contention is certainly plausible. The restitution argument was first set forth in a brief filed on

---

[4] The wrongdoing of Roy and Rudolph Terry is discussed in some detail in <u>Alexander v. Horton (In re Terry Mfg. Co.)</u>, 345 B.R. 377, 378-84 (Bankr. M.D. Ala. 2006) (appeal pending).

[5] Ironically, the fraud argument advanced by the Defendants ultimately undercuts their legal position.

-13-

September 21, 2006, by John Bernard, III, and several others. (Doc. 417, pp. 7-13). In this brief, the Defendants cite a number of cases in support of their restitution argument.

### 4. Survey of case authority

The Defendants cite a number of cases in support of their restitution argument. The Court will first consider the case of <u>Cunningham v. Brown</u>, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924). <u>Cunningham</u> is the original Ponzi scheme case, involving the bankruptcy of Charles Ponzi, who had an involuntary bankruptcy petition filed against him in Boston in 1921. 265 U.S. at 8. The opinion describes the Ponzi scheme in considerable detail. The first thing one notes is that this was a preference case and not a fraudulent conveyance case. The District Court and the Court of Appeals ruled in favor of the defendants. <u>Id.</u> at 9. However, the Supreme Court reversed, holding that the payments were voidable as preferential transfers. <u>Id.</u> at 13. Thus, <u>Cunningham</u> is of no use to the Defendants here for two reasons. First, the Court was not deciding a fraudulent conveyance case. Second, the Supreme Court rejected the restitution defense proffered here.

The Defendants rely heavily on a case handed down by the District Court in Utah. <u>See Merrill v. Abbott (In re Independent Clearing House Co.)</u>, 77 B.R. 843 (D. Utah 1987). In <u>Independent Clearing</u>, the debtors solicited funds from private investors, who were called "undertakers." These undertakers signed contracts and were found to be creditors. <u>Id.</u> at 848-49. The factual setting in <u>Independent Clearing</u> was quite complex. However, the "undertakers" in <u>Independent Clearing</u> were not stockholders. Rather, the "undertakers" were owed a debt on a contract. To be sure, the decision speaks in terms of restitution, which is a term the Defendants here use frequently. However, there is no obligation to make restitution to the Preferred

-14-

Shareholder Defendants here, which makes the facts of this case distinctly different than those of Independent Clearing.

The Defendants also cite the cases of Jobin v. McKay (In re M&L Business Machine Co.), 84 F.3d 1330 (10th Cir. 1996); Eby v. Ashley, 1 F.2d 971 (4th Cir. 1924); and Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995). All of these cases involve a Ponzi type fraud scheme, but none of them involve the rechacterization of dividends as the repayment of an indebtedness. In the classic Ponzi scheme, someone advances money with a promise of an unrealistically high return. The early investors, such as Defendant Phillips in Scholes v. Lehmann, are permitted to recover the amount of their original investment, that is restitution; however, they are not permitted to retain anything more. Having carefully examined the case law cited by the Defendants, the Court concludes that it does not support the restitution contention advanced here. The Trustee cites a case from Delaware which is similar to the case at bar in that a trustee in bankruptcy alleged that the payment of preferred stock dividends by an insolvent corporation was a fraudulent conveyance. See Official Comm. of Unsecured Creditors v. Blackstone Family Investment P'ship (In re Color Tile, Inc.), 2000 WL 152129 (D. Del. Feb. 9, 2000). The following passage from Color Tile is instructive:

> Defendants next argue that the purchase of the preferred shares was tantamount to a $52 million loan to Color Tile and that the dividends were payments in satisfaction of this antecedent debt. Construed as such, the dividend payments could not have been fraudulent transfers. At issue, then, is whether the purchasers of the preferred shares held equity or debt in Color Tile.
>
> Whether a security constitutes equity or debt depends on the interpretation of the contract between the corporation and the security holders. In interpreting the contract, courts consider number factors, including: (1) the name given to the instrument; (2) the intent of the parties; (3) the presence or absence of a fixed maturity date; (4) the

-15-

right to enforce payment of principal and interest; (5) the presence or absence of voting rights; (6) the status of the contribution in relation to regular corporate contributors; and (7) certainty of payment in the event of the corporation's insolvency.

* * *

Despite defendants' vehement protestations to the contrary, the preferred share constituted equity, not debt. Therefore, their attempt to characterize the dividend payment as payments in satisfaction of an antecedent debt is unavailing.

Color Tile, 2000 WL 152129, at *4-5 (internal citations omitted). While Color Tile was decided under Delaware law rather than Alabama law, and the facts of that case are considerably different than the facts here, the salient point here is that once the interest held by the recipients is determined to be equity rather then debt, any attempt to recharacterize the dividend payments as payment in satisfaction of an antecedent debt fails.

### 5. Restitution argument rejected as a matter of law

Even if the Court assumes that the Defendants were defrauded, the Court is of the view that the restitution defense advanced in their briefs is invalid as a matter of law. Notwithstanding the Defendants' argument to the contrary, there is no precedent for the proposition that dividends paid to a stockholder may be recharacterized as payments in satisfaction of some kind of debt. If that were the case, in almost every corporate bankruptcy involving fraud, shareholders could advance their status and recharacterize their equity interests as unsecured claims sharing equally in the assets with the holders of unsecured claims. The argument advanced by the Preferred Shareholder Defendants runs contrary to the deep seated policy which holds that creditors of a defunct corporation are paid before shareholders. See Trace Int'l Holdings, 289 B.R. at 560 ("A corporation holds its assets in trust for the benefit of

-16-

the corporation's creditors, and cannot lawfully distribute its assets to shareholders to the prejudice of those creditors"). The Preferred Shareholder Defendants would eviscerate that rule and place defrauded shareholders on par with creditors.

<u>6. Count II of the Complaint</u>

Count II of the complaint is indistinguishable from Count I, with one exception. Count II is brought under 11 U.S.C. § 548, rather than the Alabama Fraudulent Transfer Act. Section 548 of the Bankruptcy Code provides, in part, as follows:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property that was made or incurred on or within one year[6] before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date of such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation.

11 U.S.C. § 548(a).

The most relevant difference between a fraudulent transfer action under Alabama law and a fraudulent conveyance action brought under § 548 of the Bankruptcy Code is that Alabama law permits a creditor to look back for varying periods between four and ten years, depending upon

---

[6] Section 548(a) of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The look-back period for fraudulent conveyances under § 548 is now two years. However, the Terry Manufacturing bankruptcy case was filed on July 7, 2003, while the effective date of the 2005 amendments is October 17, 2005. The pertinent look-back under § 548 for this case is one year.

the nature of the fraudulent conveyance action. See ALA. CODE § 8-9A-9. The Bankruptcy Code (as applicable here) limits the Trustee to only a one year look-back period.

Leaving aside questions of look-back periods and statutes of limitations, two things are clear. First, under either provision, a transfer with the "actual intent to hinder, delay, or defraud" is avoidable. Second, under either provision, a transfer for less than "reasonably equivalent value" is likewise avoidable. Given this Court's disposition of the motion for summary judgment relating to Count I of the Complaint, the disposition for Count II is the same.

## B. The Contract Holders

As discussed in Part IV(A) above, most of the Defendants in this Adversary Proceedings are Preferred Shareholders. The exceptions are as follows: (1) Yvonne Davis-Robinson is the holder of a "Loan and Business Agreement," dated September 25, 2001 (Doc. 351, Ex. 1); (2) Defendant John Bernard, III, is the holder of an "Agreement and Contract," dated September 11, 2002 (Doc. 351, Ex. 2); (3) Defendant Stanford Stoddard is the holder of an "Agreement and Contract," dated September 11, 2002 (Doc. 351, Ex. 3); and (4) Defendant Swanson Funeral Home, Inc., is the holder of an "Agreement and Contract," dated September 11, 2002. (Doc. 351, Ex. 5). Defendant Yvonne Davis-Robinson was dismissed by order of this Court dated September 7, 2006. (Doc. 411). For purposes of discussion here, John Bernard, Stanford Stoddard and Swanson Funeral Home, Inc., shall be collectively referred to as "The Contract Holders."

Much of the discussion in Part IV(A) above, relating to the Preferred Shareholders, centered on the effect of the payment of a dividend by an insolvent corporation. Consideration of the Trustee's claims against the Contract Holders is complicated, because it is not clear what

-18-

kind of interest they hold. If these contracts are found to be debt instruments, then the payments made to the Contract Holders reduced, on a dollar for dollar basis, the indebtedness owed by Terry Manufacturing, and as a result, reasonably equivalent value was provided. If reasonably equivalent value was provided, the Trustee's necessarily fails. In other words, this issue turns on the question of whether the contracts in question constitute a debt or an equity instrument.

The Trustee argues, with considerable force, that underlying facts are in dispute on this question. (Doc. 418). First, the money advanced is called a "short-term investment." In contrast, the contract entered into by Davis-Robinson is clearly delineated as a loan. (Doc. 351, Ex. 1). The term investment is ambiguous, as it can mean either debt or equity. To further complicate matters, the Contract Holders are to be paid a "profit-sharing fee" rather than interest. The term "profit sharing fee" is suggestive of a dividend, implying that the contract is in the nature of an equity investment rather than a loan. One is legally required to pay interest on a debt regardless of whether a profit is earned. As discussed above, this is not so in the case of a dividend. To the contrary, a dividend cannot legally be paid unless there are profits from which to pay it. See ALA. CODE § 10-2B-6:40. To be sure, the "short-term investment" was to be repaid within 60 days, which is suggestive of a debt rather than equity, adding to the ambiguity here. Where, as here, there is a genuine issue as to a material fact, summary judgment must be denied.

### C.  The Estate of Derrick Thomas

Terry Manufacturing made fifteen dividend payments to Derrick Thomas and his Estate between July 1999 and March 2003. The Trustee's complaint seeks to avoid the transfers as fraudulent conveyances. The Estate of Derrick Thomas filed a motion for summary judgment,

Case 05-03050   Doc 473   Filed 01/25/07   Entered 01/25/07 17:15:57   Desc Main
Document      Page 19 of 22

arguing that all claims against the estate of a deceased person are barred by a Missouri non-claim

statute. Section 473.444 of the Missouri Probate Code provides:

> Unless otherwise barred by law, all claims against the estate of a
> deceased person, other than costs and expenses of administration . .
> . whether due or to become due, absolute or contingent, liquidated or
> unliquidated, founded on contract or otherwise, which are not filed
> in the probate division, or are not paid by the personal representative,
> shall become unenforceable and shall be forever barred against the
> estate, the personal representative, the heirs, devisees and legatees of
> the decedent one year following the date of the decedent's death,
> whether or not administration of the decedent's estate is had or
> commenced within such one-year period and whether or not during
> such period a claimant has been given any notice, actual or
> constructive, of the decedent's death or of the need to file a claim in
> any court. . .

MO. REV. STAT. § 473.444.

Derrick Thomas received three dividend payments, totaling $6,750.00, prior to his death,

and his Estate received twelve dividend payments, totaling $27,000.00, after Mr. Thomas' death.

As each payment constitutes a separate transfer subject to avoidance, this Court will discuss the

applicability of the non-claim statute to the Trustee's claims in two parts. First, the Court will

discuss the first three payments made to Mr. Thomas prior to his death. Second, the Court will

discuss the last twelve payments, paid directly to the Estate after Mr. Thomas' death.

As to the first three payments, the Estate argues that it is entitled to summary judgment,

because it is undisputed that the dividends were paid to Mr. Thomas prior to his death and the

Trustee did not assert its claims within the one year limitations period provided for in the statute.

Therefore, the Estate asserts that these payments fall squarely within the procedural bar of the

non-claim statute. This Court agrees with that conclusion and grants summary judgment in favor

of the Estate in the amount of $6,750.00.

The more difficult issue is whether the last twelve payments are barred by the statute. The Estate argues that these payments are also barred, citing to the Missouri case of <u>Miller v. Swearigen (In re Estate of Spray)</u>, 77 S.W.3d 25 (Mo. Ct. App. 2002). In that case, a pond cleaner was hired to complete work on behalf of a landowner. After the work had begun, the landowner died, but the pond cleaner continued to work. When the estate of the landowner refused to pay him, the pond cleaner filed a claim in probate. The Missouri court disallowed the claim under MO. REV. STAT. § 473.444, because the pond cleaner did not file his claim within one year of the landowner's death. <u>Id.</u> at 26. Using the <u>Spray</u> case, the Estate argues that under the non-claim statute, it makes no difference whether the services were performed prior to or after the decedent's death.

This Court finds <u>Spray</u> distinguishable from the case at bar. <u>Spray</u> involved a single contract action, which was partly performed prior to the landowner's death and partly performed after. Here, we have fifteen separate transactions, twelve of which occurred after Mr. Thomas' death. The Trustee argues that its claims are against the Estate based on the Estate's receipt of the dividend payments after Mr. Thomas' death. This argument is well taken. Missouri's non-claim statute makes an exception for "costs and expenses of administration." <u>See</u> MO. REV. STAT. § 473.444. This Court holds that the Trustee may proceed against the Estate of Derrick Thomas for its causes of action as "costs and expenses of administration." Therefore, summary judgment is denied as to the last twelve payments.

## V. CONCLUSION

In summary, the motion for summary judgment filed by John Bernard and all motions joining in that motion are DENIED. (Docs. 349, 350, 415, 416, 417, 419, 421, 422, 423, 424,

440, 441, 444, 445).  The motion for summary judgment filed by the Estate of Derrick Thomas is

GRANTED IN PART AND DENIED IN PART.  (Docs. 403, 404, 405).  Furthermore, the

motion for summary judgment filed by Plaintiff J. Lester Alexander is GRANTED IN PART

AND DENIED IN PART.  (Docs. 406, 409).   The Court will enter an order on a separate

document in accordance with Rule 9021, FED. R. BANKR. P.


       Done this the 25th day of January, 2007.


                             /s/ William R. Sawyer
                             United States Bankruptcy Judge